DECISION
Plaintiffs appealed Defendant's disqualification of their property from farm use special assessment for the 2010-11 tax year. Trial on the matter was held by telephone January 10, 2011. Plaintiffs appeared on their own behalf, although only Mr. Kay Bjornson (Bjornson) testified. Defendant was represented by Paul van Dyk (van Dyk), Assistant County Counsel. Defendant Susan Acree appeared along with Kathy Miller, farm/forest technician, and Erleen Simms (Simms), farm/forest appraiser. Only Simms testified.
 I. STATEMENT OF FACTS
The appeal involves 7.94 acres of land that Defendant disqualified from farm use special assessment in May 2010. The disqualification affected the 2010-11 tax year. Plaintiffs timely appealed.
Plaintiffs purchased the subject property in 2004. The property is identified in the assessor's records as Account R16132. The property was farmed in 2004 through 2008. There was no farming in 2009. Farming was resumed in 2010 or 2011.
Bjornson testified that a tenant farmer named Lee Sand (Sand) farmed the property from 2004 through 2007. Sand would cut hay that grew naturally on the property and then irrigated the field to promote the growth of alfalfa which he would later cut, haul away, and sell. *Page 2 
Bjornson acknowledged on cross-examination that no crops were planted during those years. Sand paid Plaintiffs $350 per year to farm the property.
Plaintiffs ran into trouble in 2008, when Sand simply failed to cut the hay by the end of June or early July. Sand gave Plaintiffs no advance notice of his intent not to farm the land in 2008. Plaintiffs found another individual, Madeline Oldfield (Oldfield), willing and able to harvest the hay in 2008. According to Bjornson, the market price for the hay was approximately $1,500, and Oldfield paid them one-third of that amount, or $510. Defendant's farm appraiser Simms testified that Oldfield told her that the hay she harvested was of such poor quality that she could not feed it to her cows.
More trouble followed in 2009. Oldfield contacted Plaintiffs at the end of June or early July and advised them that she was not interested in farming the property that year. Bjornson testified that he quickly discovered he had a problem, and, after attempting unsuccessfully to find someone to agree to farm his land, he contacted the county extension office, but none of the names he was given bore fruit. Plaintiffs could find no one interested in farming the property in 2009 and no farming occurred that year.
Plaintiffs found a new individual to farm the property in 2010. That person, Mike Ritchie, agreed to plant and harvest cabbage. Although van Dyk indicated during his opening statement that Plaintiffs are "now farming the property," Defendant's exhibits A and B reflect a lack of farming on July 16, 2009 (Ex B) and that no farming had commenced as of February 22, 2010 (Ex A). Farming presumably resumed later in 2010.
Both Sand and Oldfield told Plaintiffs that one of the reasons they were uninterested in farming Plaintiffs' property was because it was "too bumpy." The bumpiness was due, at least in part, to the three or more test holes Plaintiffs had dug on their property to determine if septic *Page 3 
systems were feasible. The septic systems were explored as part of Plaintiffs' plans to eventually develop the property.
Simms, who testified for Defendant, has 35 years of experience with farm appraising. Simms is familiar with the local farming practices in the Garden Valley area where the subject property is located. She testified that Plaintiffs' property was on the river, in an excellent area for farming, and that growing and harvesting hay is an underutilization of the property. According to Simms, many area farmers grow onions. Plaintiffs could have had multiple hay and alfalfa crops in 2009 and earlier years if they had properly irrigated the land.
Defendant disqualified Plaintiffs' property from farm use special assessment by letter dated May 14, 2010. The disqualification resulted in the property being taxed at a higher value for the 2010-11 tax year.
 II. ANALYSIS
Not to overstate the obvious, but a fundamental requirement for farm use special assessment is that the property be farmed. Plaintiffs' property is zoned for exclusive farm use and there is therefore no minimum income required. However, Plaintiffs must have been farming the property for the year at issue in order to qualify for special assessment.
The statutory definition of "farm use" provides in relevant part that "`farm use' means the current employment of the land for the primary purpose of obtaining a profit in money by [raising, harvesting and selling crops]." ORS 308A .056(1)(a).[1]
A portion of Plaintiffs' property, 7.94 acres, was disqualified from farm use special assessment pursuant to ORS 308A.113(1)(a) because of a lack of farming. That statute requires *Page 4 
the assessor to remove property from special assessment "upon the discovery that the land is no longer being used as farmland."Id.
Plaintiffs acknowledge that there was no farm activity occurring on the property in 2009, and the evidence indicates that farming was not underway until well into 2010. Defendant was therefore required to remove the property from farm use special assessment upon discovery that no farming was taking place.
Bjornson contends that his "crime" was his naïvety about farming. Bjornson insisted that it was Plaintiffs' intention all along to farm the property, but that they simply lacked market knowledge. It was only over time that Plaintiffs discovered it was too costly to find someone to bring in their equipment, harvest a crop, and haul away the crop for storage and sale. Bjornson argued that the statute does not focus on results, but rather intent, and because it was Plaintiffs' intent to farm, they should be allowed special assessment. The court disagrees. Farming is required.
 III. CONCLUSION
The court concludes that Defendant acted correctly in disqualifying 7.94 acres of Plaintiffs' property from special assessment due to a lack of farming. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal seeking reinstatement of farm use special assessment for the 2010-11 tax year is denied for the reasons set forth above.
Dated this ____ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon February 24, 2011.
 The Court filed and entered this documenton February 24, 2011.
[1] The statute does recognize additional activities as qualifying farming practices, including breeding, managing and selling livestock or poultry, etc., selling dairy products, and stabling or training horses, among other things, but none of those activities pertain to the instant appeal. See generally ORS 308A.056(1). All references to the Oregon Revised Statutes (ORS) are to 2009. *Page 1